E-FILED
Monday, 25 September, 2017  04:35:37 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

| | |
|---|---|
| Matthew Snyder,<br><br>                       Plaintiff,<br><br>v.<br><br> BNSF Railway Co.,<br><br>                     Defendant. | Case No. _____<br><br>**COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

### INTRODUCTION

1.      In March of 2015, Plaintiff Matthew Snyder was in a car accident that resulted in his foot being amputated. In October of 2015, after being fit for a prosthetic and months of physical rehabilitation, Snyder was cleared by his doctors to return to work at Defendant BNSF Railway Co. For the next nine months, however, BNSF refused to return him to work, perpetually claiming that it needed more information about his injury and that it needed him to pass certain tests. Though Snyder provided all of his medical information to  and passed every test, including one that would have allowed him to serve in the armed forces,  refused to return him to work until he filed this case with the EEOC, in violation of the Americans with Disabilities Act, 42 U.S.C § 12101 *et seq.*, as amended ("ADA").

### PARTIES

2.      BNSF is a railroad carrier that is engaged in interstate and foreign commerce, including in this District.

3.      Snyder resides in this district.

### JURISDICTION AND VENUE

4.      This Court has original jurisdiction over Snyder's ADA claims under 28 U.S.C. §

1331.

5.      Venue is proper under 28 U.S.C. § 1391 because Snyder resides in this district, BNSF operates in this district, and the illegal conduct occurred in this district.

## BNSF REFUSES TO RETURN SNYDER TO WORK

6.      In March of 2015, Snyder was in a car accident that resulted in his foot being amputated.

7.      In October of 2015, after being fit for a prosthetic and months of physical rehabilitation, Snyder was cleared by his surgeon and general practitioner to return to work at BNSF.

8.      BNSF refused to return Snyder to work, telling him that it needed "more information" about his injury.

9.      Snyder then provided the notes of his prosthetist, who best knows what tasks Snyder was able to perform and who took detailed notes during each visit with Snyder, to BNSF.

10.     BNSF then told Snyder that it wanted him to take the Amputee Mobility Predictor and High Level Assessment tests before it would return him to work.

11.     The latter tests is used to test active members of the military and involves tasks like laying down and jumping up quickly, and sprinting through a course of cones, both of which were far more difficult than any of the functions of his job at BNSF.

12.     Snyder passed the Amputee Mobility Predictor and High Level Assessment tests.

13.     BNSF still refused to return Snyder to work, telling him that it still needed more information about his injury.

14.     Unsure of what more he could possibly due to demonstrate his ability to perform his job's essential functions, Snyder filled this case with the EEOC.

15.     Only then, after being threatened by legal action, did BNSF return Snyder to work.

16.     BNSF refused, however, to compensate Snyder for the nine months it refused to return him to work even though Snyder could perform his job's essential functions.

17.     By the time BNSF finally offered him his job back, Snyder had enrolled in and begun attending college.

18.     Because Snyder reasonably believed that it was this case that caused BNSF to offer him his job back and that BNSF would again take him out of service once this case was closed, Snyder opted to stay in college and not return to work at BNSF.

## CAUSES OF ACTION

## VIOLATIONS OF 42 U.S.C. § 12101, *et seq*.

19.     BNSF was Snyder's "employer" within the meaning of the ADA.

20.     Snyder is disabled within the meaning of the ADA.

21.     Snyder is a qualified individual within the meaning of the ADA.

22.     Section 12112(a) of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

23.     Section 12112(b)(5)(A) of the ADA defines "discriminat[ing] against a qualified individual on the basis of disability" as including "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . ."

24.     BNSF discriminated against Snyder on the basis of disability when it refused to return him to work.

3

25.     Because BNSF violated 42 U.S.C. § 12112, Snyder has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Snyder is also entitled to attorneys' fees and costs incurred in connection with these claims.

26.     BNSF committed the above-alleged facts with reckless disregard or deliberate disregard for Snyder's rights and safety. As a result, Snyder is entitled to punitive damages.

## REQUEST FOR RELIEF

27.     Snyder requests that the Court find BNSF acted in direct violation of the ADA.

28.     Snyder further requests that the Court order BNSF to:

- reinstate him;

- pay to him an award for compensatory damages arising from loss of income and benefits in an amount to be determined by the trier of fact;

- pay to him an award for garden-variety emotional distress in an amount in excess of $75,000.00;

- pay to him an award for costs (including litigation and expert costs), disbursements, and attorneys' fees; and

- pay to him an award for $300,000 for punitive damages for each violation of the ADA.

29.     Snyder further requests that the Court order judgment against BNSF for all other relief available under the ADA and such other relief as the Court deems just and equitable.


Dated: September 25, 2017

Respectfully submitted,

Matthew Snyder

By:  s/Amit S. Bindra
     One of the Attorneys for
     Plaintiff

The Prinz Law Firm, P.C.
Amit Bindra (abindra@prinz-lawfirm.com)
Kristen E. Prinz (kprinz@prinz-lawfirm.com)
1 East Wacker Drive, Suite 550
Chicago, IL 60601
P: (312) 212-4450
F: (312) 284-4822