E-FILED
Saturday, 28 September, 2019  06:34:42 AM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| MATTHEW SNYDER,<br>    Plaintiff,<br><br>v.<br><br>BNSF RAILWAY CO.,<br>    Defendants. | Case No. 4:17-cv-04263-JEH |

### Order

Before the Court is the Defendant, BNSF Railway Company's, supplemental motion for summary judgment (D. 38) and the Plaintiff, Matthew Snyder's, response thereto (D. 39)[1]. For the reasons stated, *infra*, the motion is granted.

### I

### A

Snyder suffered an injury in a car accident necessitating a below-the-knee amputation. Snyder filed suit against his employer, BNSF, alleging that when he tried to return to work, BNSF refused to accept his doctors' notes and unnecessarily delayed his return because of his disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–213.

The Court previously granted summary judgment in favor of BNSF on all of Snyder's claims, save one.[2] (D. 24). Specifically, the Court held that there was a disputed material issue of fact concerning whether BNSF's requests for (1)

---

[1] References to the docket are cited herein as "D. __ at ECF p. ___."
[2] Chief Judge Sara L. Darrow entered this Order on summary judgment prior to the parties consenting to the jurisdiction of a magistrate judge.

1

Snyder's hospital discharge summary after his initial accident treatment and (2) Snyder's primary care physician's notes of his office visits during his recovery violated 42 U.S.C. § 12112(d)(4)(A), which prohibits inquiries regarding the nature and severity of an individual's disability unless such inquiries are job-related and consistent with business necessity. Although the Court acknowledged that the medical inquiry claim constituted a "change in legal theory" (D. 24 at ECF p. 9), the Court went on to *sua sponte* consider the merits of this claim without full briefing on the issues by the parties.

Thereafter, BNSF filed a motion for leave to file a supplementary motion for summary judgment, arguing that because Snyder first made his change in legal theory in his response to BNSF's motion for summary judgment, the parties did not have an opportunity to adequately brief the merits of the issue. (D. 31). More specifically, BNSF argued that the parties should be allowed to brief a legal question not addressed in the original summary judgment order, to wit: whether Snyder must demonstrate a cognizable injury-in-fact before recovering damages for a violation of § 12112(d)(4). According to BNSF, allowing supplemental briefing served the interests of judicial efficiency, for BNSF would make the same argument at trial as a ground for judgment as a matter of law. (D. 31 at ECF p. 7).

Over Snyder's objection, this Court granted in part BNSF's motion for leave to file a supplemental summary judgment motion on the issue of whether Snyder must suffer a cognizable injury-in-fact in order to recover on his remaining claim. (Minute Entry of 9/12/2019). The Court agreed that, given the issue would need to be addressed at some point, it made the most sense to address the issue before conducting a jury trial on the issue. The Court, however, declined to revisit the Court's finding that a question of fact existed regarding whether the two medical inquiries in question violated the statute.

## B

In BNSF's supplemental motion for summary judgment, BNSF argues that a plaintiff cannot recover damages based solely on a claimed violation of § 12112(d)(4), but rather must also demonstrate a tangible injury-in-fact. (D. 38 at ECF p. 18). More specifically, it argues that there must be some cognizable injury-in-fact of which the violation is a legal and proximate cause for damages to arise from a violation of § 12112(d). Based on the undisputed facts in this case, Snyder has not established a tangible injury-in-fact sufficient to survive summary judgment. *Id.*

Snyder responds that the invasion of his privacy which is concomitant with the improper medical inquires is alone sufficient to survive a motion for summary judgment. However, even if the invasion of privacy alone is insufficient, Snyder argues that he has presented sufficient evidence to establish an injury-in-fact. Specifically, he argues that BNSF's refusal to reinstate Snyder until he produced the at-issue medical records delayed his return to work and, accordingly, he suffered a loss in wages. (D. 39 at ECF p. 5). Second, a reasonable fact finder could infer that the improper medical inquiries contributed to him resigning, thus deterring him from working for BNSF. *Id.* at 6. Third, he argues that a reasonable person could find that having to produce his private medical information to his employer embarrassed him and caused him to suffer stress and that such embarrassment and stress is a cognizable injury. *Id.* Finally, he argues a reasonable person could find that Snyder expended time and money obtaining the at-issue records from his doctors to provide to his employer and that the loss of his time and money is a cognizable injury.

## II

### A

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the court's function is to determine whether there is a genuine issue for trial—that is, whether there is sufficient evidence favoring the non-moving party for a jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997). As such, "summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Gekas v. Vasiliades*, 814 F.3d 890, 896 (7th Cir. 2016) (quotation marks omitted). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson*, 477 U.S. at 255).

Under the ADA,

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

42 U.S.C. § 12112(d)(4)(A). An inquiry or examination is job-related and consistent with business necessity "when an employer has a reasonable belief based on objective evidence that a medical condition will impair an employee's ability to perform essential job functions or that the employee will pose a threat due to a medical condition." *Wright v. Ill. Dep't of Children & Family Servs.*, 798 F.3d 513, 522–23 (7th Cir. 2015) (quoting *Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 565

(7th Cir. 2009)). "Such a belief requires an assessment of the employee and his[] position and cannot be based on general assumptions." *Id.* at 523 (quotation marks omitted). It is the employer's burden to demonstrate business necessity. *Id.* This burden is "quite high" and requires "significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job." *Id.* (quotation marks omitted). Relevant evidence of what is "necessary" includes an employer's "standard practice[s]" and "differential application" of requirements. *Id.* at 524 (quotation marks omitted). "[C]ourts . . . readily find a business necessity if an employer can demonstrate that a[n] . . . inquiry is necessary to determine . . . [if] the employee can perform job-related duties when the employer can identify legitimate, non-discriminatory reasons to doubt the employee's capacity [to do so]." *Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 98 (2d Cir. 2003).

Unremarkably, a plaintiff must also demonstrate that an improper medical inquiry is a proximate cause of some tangible injury-in-fact. *See Strong v. Paulson*, 249 Fed. App'x 470, 473 (7th Cir. 2007); *citing O'Neal v. City of New Albany*, 293 F.3d 998, 1007 (7th Cir. 2002) (collecting authority); *Armstrong v. Turneer Indus., Inc.*, 141 F.3d 554, 561 (5th Cir. 1998). Unremarkable because Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions. *Casillas v. Madison Ave. Assoc., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019). This fundamental, constitutional limitation on a federal court's power applies to violations of § 12112(d)(4)(A) as much as to any other statute.

**B**

Snyder first asserts that the invasion of privacy inherent in a violation of § 12112(d)(4)(A) is, standing alone, a cognizable injury-in-fact. However, the invasion of privacy is the *violation*, not the *injury*. To equate an invasion of privacy

5

with a cognizable injury-in-fact would eviscerate the principle that damages liability for an improper medical inquiry must be based on something more than a mere violation of the statute. *See Armstrong*, 141 F.3d at 562. Every violation of § 12112(d)(4)(A) involves the same generalized invasion of privacy Snyder argues occurred in this case; the invasion is part-and-parcel to the statutory violation. Concluding that an invasion of privacy standing alone is a cognizable, tangible injury is the equivalent of holding that a violation of the statute alone is sufficient to support damages liability—a conclusion contrary to the limitation on a federal court's ability to redress harms, not just legal infractions. *Casillas*, 926 F.3d at 333. Snyder does not cite, nor can this Court find, any court which has held that an invasion of privacy alone is a cognizable injury for purposes of § 12112(d)(4)(A).

Snyder also argues that his failure to produce the allegedly improperly requested medical records caused a delay in his return to work which resulted in lost wages—a cognizable injury. As an initial matter, Snyder never returned to work; he quit. Moreover, there is no dispute that he could not return to work until he passed his field test, which was scheduled for September 22, 2016. However, in July or August, long before the field test, Snyder had already accepted a position with another employer, although he did not inform BNSF of this fact until after he passed his field test on September 22 and, on September 28 (his return to work date), Snyder failed to show up for work and submitted his resignation to BNSF. There is no evidence in this record to support a conclusion that the medical inquiries at issue in any way delayed Snyder's return-to-work date. Indeed, although in April of 2016 BNSF received the information subject to the disputed medical inquiries eight days after it received the properly requested medical records, that eight-day difference had absolutely no effect on when Snyder's field test or return-to-work day was selected in September. This Court has already found that the scheduling of the field test was delayed due to Snyder's stump

revision surgery and recovery in July. (D. 24 at ECF pp. 20-21). The 8-day difference in production in records back in March and April therefore were irrelevant to the date of the field test or the return-to-work date and cannot, therefore, be said to be a proximate cause of any delay or failure to return to work.

Finally, Snyder argues that a reasonable fact finder could infer that the improper medical inquiries contributed to him resigning; that having to produce his private medical information to his employer embarrassed him and caused him to suffer stress; and that he expended time obtaining the at-issue records from his doctors to provide to his employer. All of these, he argues, are cognizable injuries.

While in a particular case any or all of these types of injuries could be cognizable injuries-in-fact to support damages, they do not in this case. First, nowhere in Snyder's deposition does he make mention of having suffered any cognizable injury as a result of the medical inquiries in question. In fact, just the opposite. When asked at his deposition what damages he seeks from this lawsuit, he stated, "The loss of pay that I suffered the time that I was there, or the time that I tried to get back to work and couldn't, and then loss of pay for future." (D. 19-1 at ECF p. 24). Nowhere does Snyder mention any facts related to or damages stemming from embarrassment, stress, or time spent sending medical records to his employer. Regarding the reason why Snyder did not return to work with BNSF, again nowhere in his deposition did he link his failure to return to work to the medical inquiries at issue. Instead, he stated as his reason for failing to return to work as:

> So I am married. I have a family of four. I'm expected to provide for them. Getting back to a job that I'm in the middle of a lawsuit with, how did I know what they were going to do after the lawsuit was over. I couldn't risk my career and my -- . . . So I'm in the middle of a lawsuit with BNSF, and I have a family of four that I have to put food on the table for. I had a job that I – I had a new job. I had to somewhat move on because I wasn't getting paid from January until that point,

and so it was my intention when I went to the field test that I was not going to return to work . . .

(D. 19-1 at ECF pp. 27-28).

In apparent recognition of this dearth of evidence concerning any cognizable injuries related to the medical inquiries, Snyder submits an affidavit along with his response to the supplemental motion for summary judgment. (D. 39-1). In that affidavit, he states:

> 2. When BNSF requested them, I had one of the at-issue records at home. Thus, I only had to drive across town so that I could fax them to BNSF. I did not, however, have a copy of the other at-issue records. Thus, I had to drive twenty-five minutes to my primary care physician's office, obtain the records, and then drive to where I could fax them, and then drive home.
> 3. The at-issue records are private and having to share them with my employer embarrassed me and caused me stress.
> 4. BNSF's unlawful and ongoing request for my medical records made me uncomfortable and contributed to me deciding that I no longer wanted it to be my employer.

(D. 39-1). This affidavit is insufficient to establish an injury-in-fact.

Snyder's affidavit is akin to conclusory allegations, as opposed to facts. For example, in *Mickens v. Polk County School Board*, 430 F. Supp. 2d 1265 (M.D. Fla. 2006), the court considered a motion for judgment as a matter of law after the jury returned a verdict in favor of the plaintiff on his claim that his employer violated § 12112(d)(4)(A), the precise provision at issue here. At trial, the plaintiff testified regarding the effects of the violative medical inquiries, "Personally, I had never felt—I never felt a feeling like that before in my entire life. I was in some type of state from the psychologist's house to back home that I had never felt. I wondered in my mind if this is what a female felt like if they had been raped. Because that is the feeling that I had in route." *Id.* at 1282. The court found this evidence to be insufficient to establish an injury-in-fact, for the statute requires more than "bare

allegations of mental/emotional distress, mental anguish, stress, and inconvenience" but requires "evidence as to the actual existence of such harms." *Id.* The court concluded that such evidence might include facts establishing "loss of sleep, loss of appetite, social stigma, loss of companionship, increased stress, loss of focus, clinical depression, or any other legally cognizable measure of non-economic injury." *Id.*

The same is true in this case. Snyder's statements in his affidavit fall below the level of specificity even provided in *Mickens*. Indeed, they are, as already noted, conclusory allegations without any factual support or detail contained in the affidavit itself or his own deposition testimony. In fact, his statements made in his deposition—already quoted, *supra*—could be interpreted to actually *contradict* the affidavit. *See e.g., Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1007 (7th Cir. 1999). Regardless of whether the affidavit contradicts the deposition or not, the conclusory nature of the affidavit is insufficient to establish a cognizable injury-in-fact, and, consequently, BNSF is entitled to summary judgment.

### III

For the reasons stated, *supra*, BNSF's supplemental motion for summary judgment is granted. (D. 38). This Order, in combination with the original order on summary judgment (D. 24), disposes of all of Snyder's claims and, accordingly, the Clerk of the Court is directed to enter judgment in favor of BNSF and terminate the case.

*It is so ordered.*

Entered: September 28, 2019

s/Jonathan E. Hawley
U.S. Magistrate Judge